DECISION AND JUDGMENT ENTRY
This is a consolidated appeal from two different judgments of the Erie County Court of Common Pleas, Juvenile Division, filed on May 10, 2000, in which the court ruled that appellant, Lee A. R., failed to purge two previous findings of contempt, and ordered him to consecutively serve two thirty day sentences in jail. Appellant has presented three assignments of error for consideration on appeal that are:
 "FIRST ASSIGNMENT OF ERROR The appellant was denied his right to procedural due process when the trial court failed to obtain a valid waiver of appellant's waiver of counsel at hearing.
 "SECOND ASSIGNMENT OF ERROR The trial judge abused his discretion in failing to continue the hearing until appellant's retained counsel could be located and be present for hearing.
 "THIRD ASSIGNMENT OF ERROR The failure of the court to even consider appellant's statements with regard to his inability to comply with the purge conditions which inability rises to the level of a complete defense, constitutes an abuse of discretion."
Appellant has fathered two children by two different mothers, and for each child, the Erie County Court of Common Pleas, Juvenile Division, entered separate orders in separate cases for appellant to pay child support. On March 19, 1999, the trial court filed form judgment entries in each case containing its rulings that appellant was in contempt of court for failing to keep his child support obligations current. The court ordered appellant to serve thirty days in jail for each contempt conviction, but stayed the imposition of the sentences on condition that appellant purge his contempt by making payments of $275.08 a month in one case, and of $64.04 per week in the other case. Appellant was also ordered to open a bank account for the purpose of making his child support payments, and was directed to provide the account number and routing number to the Erie County Child Support Enforcement Agency ("CSEA").
CSEA subsequently filed motions for the imposition of the contempt sentence in both cases, alleging that appellant failed to comply with the court orders to purge his contempt. On May 10, 2000, the trial court held a joint hearing on the motions for both cases. The transcript of the hearing begins with an opening statement from the court which includes the following statement: "The record will reflect that [appellant] is present without benefit of counsel, his having previously waived his [sic] rights to counsel under the contempt proceedings in both matters." Likewise, the form judgment entries filed by the trial court after the hearing in which the court ordered appellant to serve two thirty day sentences in jail consecutively, have check marks entered prior to the statement: "and waived his right to counsel."
The transcript shows that the trial court then held the hearing, in which an attorney for CSEA informed the trial court that its records showed that appellant had failed to make any payments at all on some occasions, and that he was still in arrears on his child support obligations for both cases. The attorney for CSEA said that because appellant is unemployed, the agency believed he was choosing when to make payments and when not to make payments, and that he was not being entirely forthright about his monetary circumstances.
Appellant attempted to contest the statements made by the CSEA attorney, and explained to the court that he had made at least partial payments to his bank account each month, but because he is self-employed as a car mechanic and is still working on building his business, he was unable to pay the full amount each and every month. He referred to documents he had to verify his statements, but they were never offered or admitted as exhibits.
Appellant explained that he brought his business records with him, and that the statements would show what his profits were and how hard it was for him to meet the obligations for child support. He said he was not hiding any of his income. Once again, the records were not offered or admitted as exhibits.
Appellant also tried to explain that he and the mother of one of his children were attempting to reach a new agreement on shared parenting that would lessen his monetary obligation for child support in regard to that son because he has the son in his care and custody for a much greater time than is reflected in the original orders in the case. The trial court interrupted him, however, saying that matter was not before the court.
The trial court then ruled that appellant had failed to purge his contempt, and ordered the imposition of both thirty day sentences, to be served consecutively. In response to protestations from appellant that he had sincerely tried to meet his obligations, the trial court said that when self-employed persons could not meet their obligations, it was time for them to get a "regular job through a regular employer." When appellant pleaded that he would loose his business if forced to serve sixty days in jail, the trial court replied that appellant knew that before he arrived for the hearing, and he should have purged his contempt.
The record shows that after the trial court filed its judgments ordering appellant to serve a total of sixty days in jail, appellant filed a motion for reconsideration.[1] On May 25, 2000, the trial court denied appellant's motions for reconsideration. The trial court also denied subsequent requests from appellant for a stay of his sentences. Appellant then filed his notices of appeal, and this court consolidated them. This court also granted appellant's request for a stay of his sentences so that his appeal would not be rendered moot.
In support of his first assignment of error, appellant argues that he was denied due process at the hearing on CSEA's motion to impose the sentences for contempt because he did not knowingly, voluntarily or intelligently waive his right to counsel in this case. He stated that he did hire an attorney to represent him in the hearing and that when the court could not reach his counsel by telephone to learn why his counsel was not present for the hearing, the trial court forced him to proceed without representation.
We note that appellee, CSEA, did not file a brief in this case. Therefore, applying App.R. 18(C) we find that the record presented supports this court accepting as correct appellant's statement that he did not knowingly, voluntarily or willingly waive his right to representation at the hearing. The record does not include a written waiver of counsel from appellant and does not contain any discussion in the hearing transcript between the trial judge and appellant to show that appellant was knowingly, voluntarily and intelligently waiving his right to counsel. See State v. Grimes (1984), 17 Ohio App.3d 71, 72-73; Moranv. Colaner (July 19, 1999), Tuscarawas App. No. 1998 AP 090105, unreported; and State v. Donahoe (March 21, 1991), Greene App. No. 90CA55, unreported.
We next consider the nature of the contempt powers that were exercised by the trial court in this case. As the Ninth District Court of Appeals discussed in an analogous case:
 "It has been stated that `[s]entences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court.' * * * Criminal contempt `is usually characterized by an unconditional prison sentence.' * * * By contrast, `civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court.' * * * In civil contempt the `contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered.' Winkler v. Winkler
(1991), 81 Ohio App.3d 199, 201. (Citations omitted.)
After reviewing the transcript from these consolidated cases, we conclude that the trial court was exercising its criminal contempt powers because it was clearly no longer attempting to coerce appellant to pay his child support arrearages.[2] Instead the trial court was punishing appellant for not complying with its previous orders. See Winkler v.Winkler(1991), 81 Ohio App.3d 199, 201. As the Ninth District Court of Appeals explained:
 "Once the contempt power is classified as criminal, the contemnor is entitled to those rights and constitutional privileges afforded a defendant in a criminal action. * * * The most important of these are the contemnor's right to due process and to have the complainant prove the contempt beyond a reasonable doubt." Id. at 202.
In this case, appellant was not afforded his full due process rights. CSEA was permitted to prove its case against appellant by having its attorney make representations to the court. The record shows that appellant would have benefited from having counsel to challenge the statements and assumptions voiced by the CSEA attorney regarding appellant's failure to pay and CSEA's belief that appellant was not being forthright about his ability to pay. Appellant's counsel could have introduced evidence to show that appellant did engage in a good faith effort to purge his contempt and was not underemployed or hiding his income. This information was relevant, because the issue under consideration was whether appellant had attempted in good faith to comply with the court orders for purging his contempt for child support owed. See, id. at 203. The information should have been considered by the trial court before it decided beyond a reasonable doubt that appellant had not made a good faith effort to comply with its orders and was in willful violation of its contempt orders. Appellant's first assignment of error is well-taken.
In support of his second assignment of error, appellant says that if this court is not persuaded by his arguments in his first assignment of error that he was constitutionally entitled to counsel or that he did not make a knowing, intelligent and voluntary waiver of counsel, he asserts an alternative argument that the trial court abused its discretion when it went forward with the hearing knowing that appellant had hired an attorney, who failed to appear for unknown reasons. As our discussion of the first assignment of error shows, this court has already found that appellant was entitled to counsel at the hearing. We have further ruled that the record does not show that appellant made a knowing, intelligent and voluntary waiver of his right to counsel. Accordingly, appellant's alternative argument is rendered moot and the second assignment of error is not well-taken.
In support of his third assignment of error, appellant argues that the trial court abused its discretion when it failed to consider the information he tried to present to show that he had made a good faith effort to purge the court's contempt orders, and that he had an inability to pay the full amounts owed. In our discussion of the first assignment of error, this court noted that the trial court should have considered the information appellant was attempting to present to show that he had made at least partial payments, that he was unable to pay the full amounts owed but was making a good faith effort to comply, and that he was not hiding income and was not underemployed. Accordingly, appellant's third assignment of error is well-taken.
The judgments of the Erie County Court of Common Pleas, Juvenile Division, are reversed. This case is remanded for further proceedings consistent with this decision. Appellee CSEA is ordered to pay the court costs of this appeal.
JUDGMENTS REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
George M. Glasser, J., Richard W. Knepper, J., Mark L. Pietrykowski,P.J. CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Appellant presented several documents to support his motion for reconsideration to show that he had hired an attorney for the hearing, why the attorney did not arrive, and that he had some evidence to support the assertions he made at the hearing that he had made some payment for which CSEA did not credit him. This court cannot rely upon that information, however, because a motion for reconsideration in a trial court is a nullity. See Pitts v. Ohio Dept. Of Transportation (1981),67 Ohio St.2d 378, 380.
[2] The record shows that after the trial court said it was going to impose the sentences, appellant repeatedly asked the trial court what he could do to avoid being jailed, and the trial court told appellant it was "too late" that he had been given time to purge his contempt and that the trial court had "no choice" but to jail appellant. These statements show that the trial court was more interested in punishment, than in coercing payment from the contemnor.